ant as they may hereafter appear by answer, upon the face of the pleading, in my judgment, presents issues, the determination of which must adjust the legal and equitable claims of the parties to the subject of the suit. The subject of the suit is the land described in the complaint which it is alleged the plaintiff owned at the time of the contract and still owns, and is, under the terms of the contract, of the value of $12,800.

Whether this is an action for specific performance or an action to adjust the legal and equitable claims of the parties, plaintiff and defendant, to this real estate, under the terms of this contract, in the light of what has been done by both of them under it, is in my judgment immaterial. The effect of a judgment in this particular case, under the allegations of the complaint herein, as I construe the complaint, and as I believe was intended and interpreted by the plaintiff, as is evidenced by the prayer of the complaint, must necessarily be an adjustment of the legal and equitable·claims of the parties to the subject of the suit, which is the real estate described in the complaint, and of the agreed value of $12,800. Stinson v. Dousman, 20 How. 61 U. S. 461, 15 L. Ed. 966; Anderson v. Gerding, 3 Woods, 491, Fed. Cas. No. 356.

It follows from the foregoing that it is my judgment that this court has jurisdiction of this case, and that the motion to remand should be denied, and it is so ordered.

## In re RAINWATER.

(District Court, S. D. Mississippi, Jackson Division.   January, 1911.)

1. BANKRUPTCY (§ 395*)—EXEMPTIONS—"HOUSEHOLDER HAVING FAMILY."

Under Bankr. Act July 1, 1898, c. 541, § 70, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451), providing that a bankrupt's trustee takes title to the bankrupt's property as of the date of his adjudication, a bankrupt was not entitled to exemptions under Code Miss. 1906, § 2147, allowing exemptions to a householder having a family by virtue of a marriage contracted after his adjudication.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 395.*

For other definitions, see Words and Phrases, vol. 4, p. 3371.]

2. BANKRUPTCY (§ 395*)—EXEMPTIONS—FAMILY.

Under Code Miss. 1906, § 2147, giving a debtor, who is a citizen householder and having a family, certain exemptions, a resident bankrupt, who was a widower, was not entitled to exemptions by reason of the fact that he contributed to some extent to the support of two sisters, who did not reside with him.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 395.*]

3. BANKRUPTCY (§ 400*)—EXEMPTIONS—BURDEN OF PROOF.

On an application by a bankrupt for exemptions, the burden is on him to prove his right thereto by conclusive evidence.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 400.*]

In the matter of bankruptcy proceedings of W. R. Rainwater. On certificate of a referee denying the bankrupt's claim to exemptions. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Upon certificate of referee.

To the Honorable District Judge:

The undersigned, F. M. West, one of the referees in bankruptcy of this court, hereby certifies the following facts, with his opinion thereon, for action, pursuant to section 39 of the bankruptcy act:

The question here presented is whether the bankrupt is entitled to certain exemptions claimed.

The facts are: On June 11, 1910, Rainwater was adjudged a voluntary bankrupt, and at the first meeting of creditors, June 27, 1910, a trustee was duly elected. In the schedules as originally filed, the bankrupt claimed as exempt certain real estate situate in the village of Lucien, Miss., consisting of two lots, with storehouse thereon, valued at $2,000, in the upper story of which building the bankrupt resided.

This property was incumbered to a bank at Brookhaven, Miss., for $600. On July 23, 1910, the bankrupt filed his petition, praying leave to amend his schedules so as to claim as additional exemptions the sum of $200, in the hands of the trustee, and declared in said petition that he did not know at the time he filed his schedules that he could hold as exempt the said sum of $200, because of being a resident of the said village; that he had not learned of such right until after the filing of his schedules, and of his adjudication.

At the first meeting of creditors, upon examination of the bankrupt, creditors verbally objected to the allowance of the real estate as exempt, and on July 18 and August 2, 1910, they filed formal written objections to such allowance and to the further allowance of said $200. In the schedules as originally filed, the bankrupt claimed the real estate as exempted to him as head of a family because he had two sisters dependent upon him for support, one of whom lived with him. A few days before the first meeting, and after the adjudication, the bankrupt, evidently to make, as he thought, assurance doubly sure, took unto himself a wife, so that in his amended petition for exemptions he claimed the $200 as exempt because of being married and having also two dependent sisters, all supported by him. At the date of bankruptcy the claimant was a widower.

The statute under which the claim for exemptions is made is as follows: "(Code. 1906.) 2147. Exemptions in Cities, Towns and Villages.—Every citizen of this state, male or female, being a householder, and having a family, residing in any city, town, or village, shall be entitled to hold, exempt from seizure or sale under execution or attachment, the land and buildings owned and occupied as a residence by such person, not to exceed in value, save as hereinafter provided, three thousand dollars, and personal property to be selected by him, not to exceed in value two hundred and fifty dollars, or the articles specified as exempt to the head of a family."

There are two questions presented for determination:

First. Is the bankrupt entitled to the exemption because of being a married man?

Second. If he is not entitled to the exemption because of his marriage, is he entitled to the exemption because of having two dependent sisters?

[1] I do not think his marriage after the adjudication of itself entitles him to the exemption. It should be noted that the claimant did not marry until about two weeks after his adjudication, and within a few days of the election of his trustee. The law is that the trustee takes title to all of the property of the bankrupt upon the adjudication. Section 70 of the act. This being the law, and the title of the bankrupt having passed upon adjudication (so far as the first question is concerned) to the trustee, the bankrupt could not, by marrying again after adjudication, retake the title which had already passed from him. The allowance of exemptions is fixed as of the date of the adjudication. Matter of Fletcher (D. C. Ohio) 16 Am. Bankr. Rep. 491. In the Fletcher case the bankrupt pursued a like course to the one here. He was a single man at adjudication, but between that time and the first meeting of his creditors and election of a trustee he married; but that availed him nothing, since the court held that he had lost his title to the property when adjudication was had, and that his marriage did not revest the title in him. The cases of Irwin v. Lewis, 50 Miss. 363, Letchford v. Cary, 52 Miss. 791, Jones

v. Hart, 62 Miss. 13, and Dulion v. Harkness, 80 Miss. 14, 31 South. 416, 92 Am. St. Rep. 563, have no application here.

Those cases, under a state statute, decide that the debtor at any time before sale under execution may move upon the land, and, if he be head of a family, he may claim the property as exempted, and thus defeat the sale· of the property levied upon. He may even marry at any time before the sale of the property and claim it as exempted, and his claim will be recognized. It should be noted that the debtor in those cases does not part with the title until the land is actually sold under execution. In the instant case the title passed at date of adjudication. The distinction is quite evident.

[2] Now as to the second question:

The testimony shows that the claimant had a sister living at Wesson, Miss., who had three little girls working in the cotton mills at that place, and ⁕one boy who worked in a store, and that he occasionally sent such sister sums of money, though the bankrupt mentions only one sum of $5, which he says he gave his sister some time after June 1, 1910. The boy's age is given at 13 or 14, and is older than the little girls. It is not contended that this sister at Wesson resides with the claimant, but that she is dependent upon him for support. The evidence does not clearly show that she is dependent upon the bankrupt for support, and, even if she were, such fact would not entitle him to exemption. In the case of Pearson v. Miller, 71 Miss. 379, 381, 14 South. 731, 732, 42 Am. St. Rep. 470, Wood, J., said: "A householder may be said to be a person owning or holding and occupying a house; and a family may be defined to be a collection of persons living together under one head. A householder having a family may be characterized as the head of a family occupying a house and living together in one domestic establishment. He need not be a husband or a father, nor need the family over which he has headship and control be kept together as a unit continuously. The education of children, the illness of any member of the family requiring change of climate, or mere absence, however protracted, if only temporary, for pleasure or recreation, will not, of course, dissolve the family relationship or break up the household." Applying these principles, it is easily seen that the fact that the claimant contributed to the support of the sister at Wesson, who did not reside with him, is no warrant for the allowance of the exemption.

The matter then narrows down to the one proposition: Is the bankrupt entitled to the exemption because of the claim that one other widowed sister resided with him and was dependent upon him for support? The testimony shows that this widowed sister came to his home in June, 1909, to live with him, he claims; but in the late fall of 1909 this sister went to the Gulf coast of Mississippi to be with her daughter-in-law. Claimant in another place in his testimony says that this sister came to live with him in January, 1909, so I am unable to say which date is correct, and these dates, conflicting as they are, are the only dates testified about as fixing the time of this sister's coming to the claimant's home to live. There is nothing in the testimony showing whether the daughter-in-law was a widow or had a husband, and the cause of the bankrupt's sister going to the Gulf coast is stated by the bankrupt as follows: "My sister had been living with me some time up until here last fall, when her daughter-in-law went off down here on the coast. She was living there, too. I was taking care of all three of them. She got sick and went off. Dr. Hudson sent her off down here on the coast where she come from, and she sent back for my sister to come down there and wait on her until she died or got better, and I got a letter from her the other day that she was going to Texas." I presume the claimant in speaking of supporting "all three of them" meant that he was supporting his two sisters and the daughter-in-law of one of the sisters (the one that went to the Gulf coast), though he does not clear the matter up in his testimony. Claimant also testified that he had given the sister going there $38 or $40 when she left his home, and that he had not sent her anything since that time. It will be noted in the excerpt above that the bankrupt says, "She was living there, too," evidently referring to the sister. The letter referred to by the bankrupt is as follows: "dear Brother. As I am By my sef I will com and Sta with you as long as I liv as Winfield hast to take louise to mexco as She is just like tom was and has Bin sick all the time. We cannot do enny thing

for her he is going to tak hear of. I will haft to com and liv with you all the tim. I will Be up thare in a Bout too weaks. I hav monny to com on and will Be thare. S. E. thomas." This letter is not dated. It is not shown who "Winnfield" is. He may be the son of the bankrupt's sister. That inference is excusable, since the bankrupt speaks of his sister as "living there, too"; and the inference would also be excusable that because of the lady's ill health her husband was going to take her to Mexico, and this prospective action deprived the sister of her home on the coast with her son and his wife, and that she was compelled to come to her brother, the bankrupt here.

[3] The testimony in this case leaves too much to infer. It seems to me that, if a bankrupt is entitled to his exemptions, he must make a clear proof of that right. Certainly the burden is upon him to establish his claim to them, and the proof should be conclusive. It is not conclusive in this case. I think I should note here, too, the following: On June 27, 1910, at the first meeting of the creditors of the bankrupt, he was examined, but the testimony was not reduced to writing. I have a perfectly clear recollection, however, of his evidence. He was asked if he had any money, and what had become of the cash taken in at his store the few days immediately preceding the filing of his petition in bankruptcy. He testified at first that he did not have any money; but finally corrected that by saying that he did have $8, which he had turned over to his attorney to partly defray the expense of the filing fees in the bankruptcy proceedings. He testified positively that he had no other cash; yet on July 8th, just before the trustee sold the assets for the benefit of the creditors, the bankrupt turned over to said trustee the sum of $200 in cash, which he had had in possession at the time of filing his petition and schedules, though the schedules, sworn to, show no cash, and his testimony, given under oath on June 27, 1910, was that he had no cash. Clearly, this was false swearing; and, while the Mississippi statute does not deny the exemptions because of the fraud of the debtor in concealing his assets, yet the referee is the judge of the credibility of witnesses, and such conduct on the part of this bankrupt leads me to conclude that the testimony of the claimant on the objections of creditors to the allowance of his exemptions is not impressed with that degree of truth that, to my mind, should characterize it in support of his claim.

The exemptions are, therefore, denied.

McNair & McNair, for bankrupt.
Ratcliff & Truly, opposed.

NILES, District Judge. I find no error in the action of the referee in denying the exemptions, and his conclusions are affirmed.

---

AULT & WIBORG CO. v. CHESHIRE et al.

(Circuit Court, S. D. Iowa. C. D. July 21, 1909.)

No. 2,467.

TRADE-MARKS AND TRADE-NAMES (§ 3*)—NAMES SUBJECT TO OWNERSHIP—DESCRIPTIVE TERMS.

The name "No Wash Up," as applied to a preparation for use on printing rollers and lithographing plates to obviate the necessity of washing the same after use is descriptive, and its use by one manufacturer gives him no exclusive right, nor right of action to enjoin its use by another as the name of a different preparation used for the same purpose, where the two are clearly distinguishable by their odor, the shape and appearance of the cans in which they are put up for sale, and by the labels,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes